**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **Criminal No. 1:16cr67-HSO-JCG-5**

**MICHAEL MAES**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
MICHAEL MAES' [157] MOTION FOR JUDGMENT OF ACQUITTAL OR
ALTERNATIVELY, MOTION FOR NEW TRIAL PURSUANT TO RULES 29
AND 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

BEFORE THE COURT is the Motion [157] for Judgment of Acquittal or

Alternatively, Motion for New Trial Pursuant to Rules 29 and 33 of the Federal

Rules of Criminal Procedure filed by Defendant Michael Maes.  This Motion is fully

briefed.  After considering the Motion, the record as a whole, and relevant legal

authority, the Court finds that the Motion [157] for Judgment of Acquittal or

Alternatively, Motion for New Trial should be denied.  Defendant is not entitled to a

judgment of acquittal or a new trial.

## I. BACKGROUND

A.      Maes' jury trial

On February 22, 2017, a federal grand jury returned a 10-count First

Superseding Indictment [71][1] against Defendant Michael Maes ("Defendant" or

"Maes") and three co-Defendants.  After Maes' co-Defendants entered into plea

_____

[1]  Maes had not been named a Defendant in the Criminal Complaint [1] or the original
Indictment [34], which was returned on September 7, 2016.

agreements with the Government, the Grand Jury returned a nine-count Second Superseding Indictment [136] against Maes alone. Count 1 of the Second Superseding Indictment [136] charged Maes with conspiring to possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of Title 21, United States Code Sections 841(a)(1), 841(b)(1)(A), and 846. 2d Superseding Indictment [136] at 1. Count 2 charged that Maes did knowingly and intentionally attempt to possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), and Title 18 United States Code, Section 2. *Id.*

Count 3 charged Maes with knowingly conspiring to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, specifically conducting and attempting to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity. *Id.* at 1-2. The specified unlawful activity was the distribution of methamphetamine, a Schedule II controlled substance. *Id.* at 2. Count 3 further charged that while conducting and attempting to conduct such financial transactions, Maes knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I). *Id.* Counts 4 through 9 charged Maes with separate money laundering offenses in violation of Title 18 United States Code Sections 1956(a)(1)(B)(i) and 2. *Id.* at 3-6.

A jury trial on the charges against Maes commenced on September 17, 2018,

and continued through September 21, 2018.  After the Government rested its case-in-chief, Maes moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  The Court denied the Motion because it was of the opinion that, viewing all of the evidence in the light most favorable to the Government, the evidence was sufficient to sustain a conviction beyond a reasonable doubt as to each count of the Indictment.

At the close of trial, the jury deliberated on September 21 and 22, 2018.  On the morning of September 22, 2018, the jury informed the Court that it had reached a verdict.  As the Court was preparing to return the jury to the courtroom to announce the verdict, Maes through his counsel raised an issue concerning Maes' transport to the courthouse that morning by the Stone County Sheriff's Department in a passenger transport van, and moved for a mistrial.  According to Maes' counsel, the marked transport van remained parked at the sally port entrance of the courthouse as the jurors approached the courthouse, buzzed for entry at a separate courthouse service door, and waited to enter for a period of one to five minutes.  Even though Maes admittedly remained inside the van the entire time, his counsel asserted that the jurors could see his shackles and his prison uniform.

The Deputy United States Marshal assigned to the case reported on the record that the van was waiting until someone inside the courthouse was available to open the sally port door for the van to enter, and that at no time did Maes exit the van while it was waiting outside the entrance to the sally port.  The Deputy Marshal further advised that the van windows were tinted, and supplied photographs taken

of the van that day, which the Court made part of the record as Exhibit "C-1." The Court reviewed these photographs and confirmed on the record that the windows were tinted, so much so that it was virtually impossible to see inside the passenger compartment of the van, or to even see inside the driver's side window. *See* Ex. "C-1."

The Court Security Officer who escorted the jurors into the courthouse that morning also confirmed on the record that he saw the transport van waiting outside the north side of the courthouse. However, given that heavy rain was falling at the same time, and that the windows of the vehicle were black and opaque, the Officer stated that when he looked at the van from the jurors' location he could not see inside and could not even ascertain whether the transport drivers were sitting in the van. Based on the foregoing, the Court determined that the jurors could not have seen, and did not see, Maes in his shackles or prison uniform.

Even if they had, the Court reviewed Fifth Circuit authority on the subject and determined Maes had not shown that the jury's brief and inadvertent exposure to Maes, if any, during routine security measures of transporting him into the courthouse in shackles and a prison uniform was so inherently prejudicial as to warrant a mistrial. *See United States v. Diecidue*, 603 F.2d 535, 549 (5th Cir. 1979); *see also United States v. Wilson*, 73 F. App'x 78 (5th Cir. 2003). Indeed, Maes himself and his counsel had each brought the fact of his incarceration to the jury's attention several times during the trial. This further militated against declaring a mistrial.

After the Court had resolved Maes' *ore tenus* motion, and as it was about to bring the jury into the courtroom to receive the verdict, Maes through his counsel then asserted an additional claim, that the two guards seated in the front of the transport van had engaged in some type of physical altercation between themselves while they were waiting for the sally port door to open, also purportedly in view of the jurors. Maes' counsel argued that this might have created an impression that they were fighting with Maes. Again, the Court Security Officer informed the Court that the van's windows were so dark that no one could have seen any persons inside the van, including the drivers. The Court confirmed this based upon its review of Exhibit "C-1" and again denied Maes' request for a mistrial.

Moments later, the jury returned a verdict of guilty as to Maes on the charges contained in Counts 1, 2, 3, 5, 6, 7, 8, and 9 of the Second Superseding Indictment, and a verdict of not guilty as to the charge contained in Count 4. *See* Jury Verdict [150] at 1-5. The Court then discharged the jury.

B.    Maes' Motion [157] for Judgment of Acquittal or Alternatively, Motion for New Trial

Maes' deadline for filing a motion for judgment of acquittal or for a new trial was October 5, 2018. *See* Fed. R. Crim. P. 29(c)(1); Fed. R. Crim. P. 33(b)(2). Three days after the deadline, on October 8, 2018, Maes filed a Motion [156] for Additional Time to File Motion for Acquittal or Alternatively Motion for a New Trial, citing as one of the reasons for his  request that he sought more time to attempt "to secure additional information regarding an incident involving the jury possibly viewing him while in a prison van, and that matter has been stated on the record." Mot. [156] at

1.  The Court granted Maes' Motion [156] and ordered that "[a]ny motion for judgment of acquittal and/or new trial on behalf of Defendant Michael Maes shall be filed on or before October 19, 2018." Oct. 9, 2018, Text Order.

Maes did not file any such Motion by the October 19, 2018, deadline. Instead, on October 22, 2018, three days beyond the new deadline, Maes filed the present Motion [157] for Judgment of Acquittal or Alternatively, Motion for New Trial Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. By this date, Maes had had 31 days to further investigate his claim. The Government has filed a Response [158] in opposition to Maes' Motion [157].

Maes' Motion [157], which is a mere two-pages long and is not accompanied by a Memorandum Brief, contends that the Court should set aside his conviction or order a new trial for the following reasons:

1.  The Court failed to grant the Defendant's Motion for Judgment of Acquittal at the close of the Government's case in chief.
2.  The Court erred in failing to find that the Government's evidence lacked sufficiency.
3.  The Court failed to grant the Defendant's preemptory instruction.
4.  During the trial for reasons stated by the Judge, Defendant was not able to develop certain issues.
5.  There is additional information that the defense has not been able to address.
6.  There was a prison van which included the Defendant as a passenger when a fight broke out which was observed by jurors which may have mislead them into believing that the Defendant was misbehaving and prejudiced the jury against him. Further the guards began to fight which also may have led to an assumption that the Defendant was misbehaving. The Court erred in not allowing the Defendant to address these matters in a hearing.
7.  Defendant hereby renews all objections stated on the record.

Mot. [157] at 1-2. Maes provides no additional information and cites no legal

authority to support his arguments. Maes' Motion is also untimely, but the Government did not object to its untimeliness and responded on the merits, thereby waiving that objection. Having considered Maes' Motion on the merits, the Court concludes that Maes is not entitled to the relief he seeks.

## II. <u>DISCUSSION</u>

### A.    <u>Untimeliness of Maes' Motion [157]</u>

The jury returned its verdict on September 21, 2018, and was discharged immediately thereafter. *See* Jury Verdict [150] at 1-6. Pursuant to Federal Rule of Criminal Procedure 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Under Rule 33(b)(2), "[a]ny motion for new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

Maes did not file a Motion for acquittal or new trial within the time prescribed by the Rules. Instead, Maes filed a Motion [156] for additional time, which the Court granted.[2] The Court ordered that "[a]ny motion for judgment of acquittal and/or new trial on behalf of Defendant Michael Maes shall be filed on or before October 19, 2018." Oct. 9, 2018, Text Order. Maes did not file any such Motion by the October

---

[2]  Maes' Motion [156] for additional time was filed on Monday, October 8, 2018, which was 3 days after the deadlines contained in Rules 29(c)(1) and 33(b)(3) had expired. Counsel, however, filed a Declaration of Technical Difficulties in filing this document prior to the Friday, October 5, 2018, deadline. The Court therefore considered Maes' Motion [156] for extension of time, found good cause for permitting additional time to file the motion under Rules 29 and 33, and granted the request. *See* Oct. 9, 2018, Text Order.

19, 2018, deadline. Instead, Maes filed the present Motion [157] under Rules 29 and 33 on October 22, 2018, three days beyond the new deadline.

Maes has not shown that he failed to timely act because of excusable neglect, nor has he demonstrated good cause to further extend the deadline. However, in its Response [158], the Government did not object to the untimeliness of Maes' Motion [157]. Instead, it responded only on the merits. *See* Resp. [158] at 1-3. The Court will therefore consider Maes' Motion [157] on its merits. *See, e.g., Eberhart v. United States*, 546 U.S. 12, 18 (2005) (with respect to Rule 29 and 33 motions, observing that the Government's lack of objection to untimely submissions entails forfeiture of the objection, and holding that the court should have proceeded to consider the merits after the Government failed to raise a defense of untimeliness).[3]

B.    The merits of Maes' Motion [157] for acquittal or new trial

1.    Relevant legal authority

Federal Rule of Criminal Procedure 29(c)(1) provides that a defendant may move for judgment of acquittal, or renew such a motion, after the jury returns a guilty verdict. *See* Fed. R. Crim. P. 29(c)(1). "[A] motion for a judgment of acquittal is a challenge to the sufficiency of the evidence to sustain a conviction." *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007). In considering the sufficiency of evidence supporting a criminal conviction, the Court

reviews the record to determine whether, considering the evidence and

---

[3]  *See also, e.g., United States v. Ramey*, 717 F. App'x 492 (5th Cir. 2018) (stating that the district court "may have abused its discretion in raising the timeliness" of a Rule 33 motion sua sponte in light of *Eberhart*) (citing *Eberhart*, 546 U.S. at 19).

all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc).

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Fifth Circuit has "stressed that motions for new trial are generally disfavored," and has held that "district courts have wide discretion with respect to Rule 33 motions." *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016) (citations omitted). Such motions "must be reviewed with great caution." *United States v. Smith*, 804 F.3d 724, 734 (5th Cir. 2015) (quoting *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011)).

> In this Circuit, the generally accepted standard is that a new trial ordinarily should not be granted "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citing *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir.1997)). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *Id.* (citation omitted).

*United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011).

2.   Denial of Maes' Motion for Judgment of Acquittal at the close of the Government's case-in-chief

At the close of the Government's case-in-chief, Maes moved for a judgment of acquittal, which the Court denied. Maes now asserts that the Court erred in failing to grant his Motion and in failing to find that the Government's evidence lacked sufficiency. Mot. [157] at 1.

The Government responds that the Court did not err in denying Maes' earlier

motions for acquittal, *see* Resp. [158] at 1, and maintains that there was "no basis for these motions and the evidence was more than sufficient for a rational finder of fact to determine that the defendant was guilty," *id.* According to the Government, "there was more than sufficient evidence to determine that the defendant engaged in a methamphetamine conspiracy, sent the package intended for Mississippi, as alleged in count 2, engaged in a money laundering conspiracy and committed or caused to be committed the specific offenses of money laundering." *Id.*

The Court has reviewed the record. Considering the evidence and all reasonable inferences in the light most favorable to the prosecution at the time Maes made his *ore tenus* Motions for Judgment of Acquittal at trial, a rational trier of fact could have found the evidence sufficient to establish the essential elements of each charge beyond a reasonable doubt. *See Vargas-Ocampo*, 747 F.3d at 303. Maes is not entitled to any relief on this basis.

3.  Denial of a peremptory jury instruction

Maes next argues that the Court erred by "fail[ing] to grant the Defendant's preemptory [sic] instruction." Mot. [157] at 1. The Government states that it "does not understand this basis and is unaware of a preemptory [sic] instruction that was offered by the defense." Resp. [158] at 1.

The Fifth Circuit has held that

> [a] district court abuses its discretion in omitting a requested jury instruction only if the requested language "(1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense."

*United States v. Lucas*, 516 F.3d 316, 324 (5th Cir. 2008) (quoting *United States v.*

*Simkanin*, 420 F.3d 397, 401 (5th Cir. 2005)).

It is unclear to what peremptory instruction Maes is referring, as he does not

identify any particular instruction he allegedly requested the Court to give. Nor has

Maes cited any legal or evidentiary basis to support the giving of this unspecified,

theoretical peremptory instruction. Maes did not submit any proposed jury

instructions for the Court's consideration before trial, nor did he request any

peremptory instruction at trial. Maes did not raise any objection to the Court failing

to include this supposed peremptory instruction in its final instructions.

The Court's final jury instructions included an accurate statement of the law

as to all charges contained in the Second Superseding Indictment, and covered all

legal issues relevant to the jury's consideration of each charge. Maes' only objection

to the final instructions was to the wording of Instruction Number 7, a pattern

instruction, regarding how the jury should evaluate witness testimony and

credibility. Maes did not raise any other objection to the Court's final instructions.

Even if the Court erred in failing to give a peremptory instruction, Maes has

not shown any adverse effects on his substantial rights, or that an acquittal or new

trial is otherwise warranted on this basis. Maes' Motion, to the extent it is premised

upon the failure to give some unspecified peremptory jury instruction, is not well

taken and should be denied.

4.  Maes' ability to develop "certain issues"

Maes asserts that "[d]uring the trial for the reasons stated by the Judge,

Defendant was not able to develop certain issues." Mot. [157] at 1. It is unclear to what Maes is referring. *See id.*

In response, the Government assumes this refers to the limitations placed on the testimony of defense witness Fabeon Minor. Resp. [158] at 2. "Based on memory, the Court limited him to testifying as to what he heard, but not the reasons the other witnesses may have had for saying what they were alleged to say." *Id.* The Government maintains that the Court's limitation was correct, and that "Minor's testimony about the reasons or motivation of the other witnesses would have been speculative. There was no error and certainly no prejudicial error." *Id.*

The Government may be correct in its supposition that Maes is referring to Minor's testimony, though this is certainly not clear from the Motion [157]. In Maes' earlier Motion [156] for additional time, he stated that the Court denied his "request to use relevant and admissible testimony of Fabeon Minor ("Minor"), and said testimony was proffered on the record, which unfairly prejudiced the defense." Mot. [156] at 2. While Maes' current Motion [157] lacks any factual allegations or legal citations on this point, out of an abundance of caution the Court will consider its ruling on Minor's testimony at trial as one of the grounds being raised.

The issue of Minor's testimony was not raised until the trial began. At some point before trial, Minor had apparently been incarcerated with Maes. At a different time, Minor was incarcerated for approximately two weeks with three of Maes' co-Defendants who were called to testify as witnesses on behalf of the Government. Each of these co-Defendants had entered into plea agreements with the Government.

Minor purportedly overhead all three witnesses discussing their anticipated testimony at Maes' upcoming trial, particularly changing the type of drugs involved in their dealings with Maes from marijuana to methamphetamine, in order to match Maes' federal charges and shift higher sentencing exposure to Maes. Maes' counsel sought to elicit testimony from Minor about these three witnesses' purported jailhouse statements.

Counsel for the parties had an opportunity to speak with Minor during trial and disagreed about what proffered testimony he might offer. The Court agreed to hear a proffer from Minor on the record, outside the presence of the jury, in order to determine what testimony would be permitted. After counsel for the parties each questioned Minor, the Court relied upon Federal Rule of Evidence 803(3) and relevant Fifth Circuit authority and held that Minor could testify that he was incarcerated and overheard the other individuals making statements about trying to attribute additional methamphetamine to Maes, which would demonstrate these declarants' then-existing state of mind, such as intent or motive. *See* Fed. R. Evid. 803(3). Consistent with Fifth Circuit authority, the Court also ruled that Minor could not testify as to why those individuals made these statements, as such testimony would go to the question of why the declarants held a particular state of mind. *See, e.g., United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980); *Bedingfield ex rel. Bedingfield v. Deen*, 487 F. App'x 219, 228 (5th Cir. 2012). The parties then questioned Minor in front of the jury subject to these limitations.

The Court correctly limited the scope of Minor's testimony at trial, and Maes

has not shown that he is entitled to any relief on this ground. Even if the Court erred in excluding some of Minor's proffered testimony, Maes has not demonstrated any adverse effects on his substantial rights, or that an acquittal or new trial is otherwise warranted.

5.     Maes' ability to address "additional information"

Maes states that "[t]here is additional information that the defense has not been able to address." Mot. [157] at 1. Again, it is unclear what Maes is referencing in this ground. The Government responds that "[t]here is no way for the government to respond to this basis as nothing is articulated." Resp. [158] at 2.

The Court cannot ascertain from Maes' bare-bones Motion what he means by "additional information," nor has Maes cited any legal authority to support this ground.[4] The Court has afforded Maes additional time to file his Motion in order to develop any additional information that was needed to support it. Maes' vague reference to "additional information" does not warrant relief.

6.     Prison van issue

In his next ground, Maes references the prison transport van. Mot. [157] at 1-2. According to Maes, "[t]here was a prison van which included the Defendant as a passenger when a fight broke out which was observed by jurors which may have mislead [sic] them into believing that the Defendant was misbehaving and

---

[4] In Maes' Motion [156] for Additional Time, he stated that he had "been attempting to secure additional information regarding an incident involving the jury possibly viewing him while in a prison van, and that matter has been stated on the record." Mot. [156] at 1. To the extent Maes' reference to "additional information" in the present Motion [157] may relate to the prison van incident, the Court addresses it in the next subsection.

prejudiced the jury against him." *Id.* at 1. "Further the guards began to fight which also may have led to an assumption that the Defendant was misbehaving." *Id.* at 1-2. Maes asserts that the Court erred in not allowing him to address these matters in a hearing. *Id.* at 2.

The Government responds that "[t]he Court addressed the issue adequately prior to the return of the verdict by calling its own witnesses." Resp. [158] at 2. According to the Government,

> [t]here is no indication that any jurors saw anything inside the van. Even assuming they could see inside the blacked out windows, Maes would have had to hold up his shackled hands, assuming he could have done so, for the jurors to see anything but his face and upper body. As the Court pointed out, the defense itself put the fact of his incarceration into evidence. At any rate, this is not the type of brief encounter that would have prejudiced the jury.

*Id.*

Despite being granted additional time to file his Motion, in part to obtain additional information regarding this incident, *see* Mot. [156] at 1, Maes has provided no additional evidence to the Court regarding the incident or attempted to explain why he has been unable to adduce such additional evidence. In addition, Maes does not cite any legal authority to support his Motion.

Based upon the statements of court officers and the photographs contained in Exhibit "C-1" to the trial, the Court remains convinced that no jurors were able to see into the transport van from their vantage point, nor could they see the drivers or Maes. Maes has supplied no evidence that would tend to contradict these findings. Even if the jurors had caught a glimpse of Maes, he has also not shown how he was

prejudiced in any way, particularly in light of the fact that he and his counsel voluntarily made his incarceration known to the jury. In sum, Maes has not shown that he is entitled to any relief on this ground.[5]

7.      Renewal of all objections

The last ground of Maes' Motion [157] states that he "hereby renews all objections stated on the record." Mot. [157] at 2. The Government states "[n]o further response is necessary to the seventh objection." Resp. [158] at 3.

The Court properly resolved all objections at trial, and Maes has not offered any additional argument or legal authority to support his position that the Court erred in any particular rulings at trial. For the same reasons stated with respect to each objection at trial, Maes' Motion on this ground should be denied. Even if the Court erred in resolving any objection at trial, Maes has not shown any adverse effects on his substantial rights, or that he is otherwise entitled to relief under Rules 29 or 33.

C.      Other arguments raised in Maes' Motion [156] for additional time

Maes' earlier Motion [156] for additional time advanced several grounds for relief that are not included in his current Motion [157]. Maes did not cite the record, or any relevant legal authority in support of those arguments. Even though Maes did not include those grounds in his current Motion [157] for acquittal or new trial,

---

[5] Moreover, even if any juror could have seen the drivers' alleged altercation, the appearance of transport vans at the courthouse's sally port is quite common, and there was no way for any juror to know whom the van might have been transporting and before which judge the individual inside might have been appearing that day.

out of an abundance of caution the Court will address them.

1.    Prosecutor's closing argument

Maes first asserted that during closing argument, the prosecutor

> made improper and inflammatory argument, including but not limited to telling the jury that the Defendant was bringing meth into our community, which improperly called upon the jury to side with the government and against the Defendant by virtue of his residence in California and not in Mississippi, (creating an us versus him argument) like the prosecutors and the jury, rather than reach a verdict upon proper evidence.

Mot. [156] at 2.

The Fifth Circuit generally applies "a two-step analysis to claims of prosecutorial misconduct." *United States v. Weast*, 811 F.3d 743, 752 (5th Cir. 2016) (quotation omitted). The Court first assesses "whether the prosecutor made an improper remark. If so, then [the Court] ask[s] whether the defendant was prejudiced." *Id.* (quotation omitted). According to the Fifth Circuit,

> [t]he prejudice step sets a high bar . . . . The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict. [The Fifth Circuit] generally look[s] to three factors in deciding whether any misconduct casts serious doubt on the verdict: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction.

*Id.* (quotation omitted).

"In attempting to establish that a prosecutor's improper comments constitute reversible error, the criminal defendant bears a substantial burden." *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001). The Court must "test the magnitude of the prejudicial effect of the prosecutor's remarks by considering them

in the context of the trial and attempting to ascertain their intended effect." *Id.* at 291.

"A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Valas*, 822 F.3d 228, 243 (5th Cir. 2016). "A prosecutor's argument is reversible error only when so improper as to affect a defendant's substantial rights." *Id.* (quoting *United States v. Vaccaro*, 115 F.3d 1211, 1215 (5th Cir. 1997)). "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id.* (quoting *United States v. Iredia*, 866 F.2d 114, 117 (5th Cir. 1989)); *see also United States v. Smith*, 814 F.3d 268, 276 (5th Cir. 2016). If a "prosecutor's misconduct substantially affected the fairness, integrity, and public reputation of [the] proceedings, a new trial is warranted." *Smith*, 814 F.3d at 277.

Maes has not supplied any transcript excerpts and does not cite to the record to support his argument, and the Court notes that Maes did not object to the prosecutor's closing argument. The Court has reviewed a rough draft of the transcript and has not located any type of "us-versus-him" argument advanced by the prosecutor referencing Maes bringing methamphetamine into "our community."

The prosecutor did reference Maes shipping methamphetamine for distribution into this judicial district, but those references were not improper because they were relevant to proving the charges, particularly the conspiracy charges contained in Counts 1 and 3. As the Court instructed the jury, the Government had to prove by a preponderance of the evidence as to Counts 1 and 3

that either an agreement or an overt act for each conspiracy took place in the Southern District of Mississippi. The argument made by the prosecutor did not emphasize Maes' decision to import drugs into this District despite his lack of connections to the community, and it was not akin to an impermissible "conscience of the community" argument and did not incite the emotion or the prejudices of the jury. *See, e.g., United States v. Andrews*, 22 F.3d 1328, 1343-44 (5th Cir. 1994). These were things the Government had to establish as part of its burden of proof. Maes has not shown that the prosecutor's comments about Maes sending drugs to Mississippi were in any way improper.

Even if these statements could somehow be deemed improper, Maes has not demonstrated that they substantially affected the fairness, integrity, and public reputation of the proceedings. *See Smith*, 814 F.3d at 277. Any prejudicial effect from these statements was minimal, and there was substantial evidence presented against Maes during trial. Maes testified on his own behalf, and the jury heard and obviously rejected his version of events. There were numerous witnesses, items of evidence, and issues placed before the jury, and any improper statement by the prosecutor did not overshadow what had come before and did not unduly prejudice Maes' case. *See United States v. Gallardo–Trapero*, 185 F.3d 307, 320 (5th Cir. 1999).

The Court also mitigated the prejudicial effect of any alleged statement by instructing the jury to base its decision solely on the legally admissible evidence and testimony, and by admonishing the jury multiple times throughout trial that what

the lawyers say is not evidence. Accordingly, based upon the record as a whole, no comment by the prosecutor was improper, nor did any argument by the prosecutor prejudice Maes' substantial rights. Maes is not entitled to any relief on this basis.

2.     Use of leg shackles during trial

Maes asserted that the Court required him to remain in leg shackles during trial, including during his own testimony, and this "impact[ed] his ability to function mentally, and his appearance to the jury – despite attempts to conceal it . . . ." Mot. [156] at 3. Maes has not cited any legal authority or evidence to support this mental-impact theory.

At the outset of the trial, the Court determined that Maes should be shackled at the feet during trial due to security concerns and recited on the record its particular, individualized concerns regarding him. *See Deck v. Missouri*, 544 U.S. 622, 632 (2005). Based upon this ruling, the Court took steps to ensure that no juror would be able to see or hear the leg shackles. For instance, the Court deviated from its normal custom and required everyone to remain seated when the jury and the undersigned entered and exited the courtroom. When Maes testified, he was positioned in the witness box outside the presence of the jury, and before it entered the courtroom, to ensure that no juror was aware of the shackles during trial. The presence of the shackles did not interfere with Maes' ability to participate in his own defense, and he freely chose to take the witness stand on his own behalf.

For the same reasons stated at trial, the Court properly determined that Maes should be shackled due to the Court's individualized concerns that Maes posed a

danger to others in the courtroom and a potential risk of escape given his particular history, the specific charges against him, and the potential sentence he was facing. *See id.; United States v. Banegas*, 600 F.3d 342, 345 (5th Cir. 2010). As the Court made ineluctably clear on the record, Maes' leg irons were never visible or audible to the jury, and the jury never had an opportunity to view or hear them at any point. *See, e.g., Banegas*, 600 F.3d at 346. Moreover, on more than one occasion, Maes and his counsel informed the jury that Maes was incarcerated.

Even if the Court erred in shackling Maes, there was no adverse effect on his substantial rights, and he has not shown that he is otherwise entitled to relief under Rule 29 or Rule 33.

3. <u>Presence of two case agents in courtroom during trial</u>

Maes complains that the Court "allowed the government to keep two key witnesses/investigators, both of whom testified for the government, in the courtroom, over the objection of the Defense, despite the invocation of the rule." Mot. [156] at 3. At trial, the Court permitted two case agents to remain in the courtroom, after invoking Federal Rule of Evidence 615. The case agents were from two different agencies involved in the investigation–one from the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and the other from the United States Drug Enforcement Administration ("DEA").

Federal Rule of Evidence 615 provides that

> [a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
> (a)   a party who is a natural person;

(b)     an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;

(c)     a person whose presence a party shows to be essential to presenting the party's claim or defense; or

(d)     a person authorized by statute to be present.

Fed. R. Evid. 615.

An officer or agent who has been in charge of an investigation generally comes within the purview of Rule 615(b). *See United States v. Payan*, 992 F.2d 1387, 1394 (5th Cir. 1993). The Fifth Circuit has not directly addressed whether a non-natural party is limited to designating only one representative under Rule 615(b), but has "held consistently that the district court's decision on the sequestration of witnesses is reviewed for abuse of discretion . . . ." *See id.* "[T]he decision as to how many will be excused from sequestration is just as discretionary with the trial judge as who will be excused." *United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. Unit A June 1981).

In this case, adequate grounds existed for allowing both agents to remain due to the two agencies' joint investigation and the Government's need for the agents' presence in the courtroom. *See id.* Even if a violation of Rule 615 occurred, the Fifth Circuit has held that reversal is warranted only if a defendant can show that prejudice resulted. *Payan*, 992 F.2d at 1394. Maes has identified no actual prejudice, and the Court can discern none. DEA Agent John Metcalf was the first witness called and testified almost exclusively about cell phone extraction, while HSI Special Agent Benjamin Taylor testified about specifics of the investigation into Maes' co-Defendants and the drugs seized from them, how investigators gleaned that

Maes was involved in the conspiracy, and about the investigation of Maes' drug trafficking and money laundering crimes. In short, the two agents testified about different subject matter. Under such circumstances, there was no opportunity for either of the witnesses to tailor their testimony based upon any earlier-heard testimony. Maes has not shown that he is entitled to relief on this ground.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. The Court concludes that Maes' Motion [157] for Judgment of Acquittal or Alternatively, Motion for New Trial is not well taken and should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that the Motion [157] for Judgment of Acquittal or Alternatively, Motion for New Trial Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure filed by Defendant Michael Maes is **DENIED**. Defendant Michael Maes is not entitled to a judgment of acquittal or a new trial.

**SO ORDERED AND ADJUDGED**, this the 16th day of November, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE